UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ESTATE OF SARAH M. DAVENPORT,

        Plaintiff,                        Civil Action No.
                                                   09-CV-13591

vs.

                                                PAUL D. BORMAN
UNITED STATES OF AMERICA                        UNITED STATES DISTRICT
                                                        JUDGE

        Defendant.
_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### I. INTRODUCTION

This is a federal tax case. Plaintiff, the Estate of Sarah M. Davenport ("the Estate"), seeks a $262,932 refund of federal estate taxes assessed and collected by Defendant, the United States, following the death of Sarah M. Davenport ("Decedent"). The government argues that the Court lacks jurisdiction over this case pursuant to 26 U.S.C. § 7422(a) because the Estate failed to file with the IRS, prior to the commencement of this action, a "claim for refund." Alternatively, the government contends that the Estate is precluded, under res judicata principles, from re-litigating issues related to its tax liability in light of the final judgment entered by the Tax Court in *Estate of Davenport v. Comm'r*, No. 16060-04, T.C. Memo 2006-215 (Oct. 5. 2006) (unpublished).

The government filed its Motion for Summary Judgment on March 15, 2010. This matter is fully briefed and the Court heard oral argument on July 28, 2010. For the reasons that follow, the government's motion will be granted.

1

## II. FACTS[1]

### A.

Decedent died on October 31, 2000. Prior to her death, Decedent and her parents jointly sued for damages resulting from alleged negligence during Decedent's delivery at birth ("the negligence lawsuit"). The negligence lawsuit resulted in a settlement agreement whereby two annuities were created for the benefit of Decedent.

A cash payment was also made as part of the settlement agreement. The cash was used, in part, to pay attorney fees incurred by the Davenports in prosecuting the negligence lawsuit. The remainder of the cash payment went to Decedent's parents.

### B.

On July 31, 2001, the Estate filed an estate tax return listing the assets of Decedent. The return also claimed certain deductions. Importantly, the claimed deductions did not include the attorney fees, mentioned above, which were incurred approximately nine years before Decedent's death in connection with the negligence lawsuit.

Moreover, the existence of the two annuities was noted on the tax return, but the value of the annuities was listed as zero because the Estate took the position that the annuities belonged to Decedent's parents and not to Decedent.

### C.

The Estate's tax return was audited by the IRS and a deficiency in the amount of $507,103 was assessed. The deficiency was based, in part, on the Estate's failure to include the value of the

---

[1] The facts of this case are undisputed and, at times, taken verbatim from either the Complaint or from the parties' briefs.

two annuities in the gross estate.

The Estate timely petitioned the Tax Court for a redetermination of the claimed deficiency. Following trial, the Tax Court sustained the deficiency in the determined amount of $507,103, ruling that the value of the two annuities should have been included in the gross estate. The Memorandum Findings of Fact and Opinion of the Tax Court is attached as Exhibit 1 to the government's motion.

**D.**

On January 18, 2008, the Estate filed an amended estate tax return, which listed an estate tax due of $163,718. This amount was paid with the filing of the amended return; the Estate does not seek a refund of this amount.

Importantly, the amended return included the value of the two annuities in the gross estate pursuant to the Tax Court's ruling. However, the Estate, for the first time, claimed a deduction for the attorney fees incurred nine years earlier in connection with the negligence lawsuit.

**E.**

The amended return was audited by the IRS, who disallowed the claimed attorney fees deduction. A deficiency of $262,932 was assessed against the Estate. The Estate paid the deficiency on May 1, 2009. So far as the Court is aware, nothing further was filed with the IRS prior to the commencement of this lawsuit. That is, after the Estate paid the $262,932 deficiency, but prior to the commencement of this lawsuit, the Estate filed nothing with the IRS.

**F.**

The present lawsuit was filed on September 11, 2009. The Estate seeks a refund in the amount of $262,932, which is the amount of the deficiency assessment it paid on May 1, 2009.

# III. ANALYSIS

The government argues that it is entitled to summary judgment for two reasons. First, the government contends that the Court lacks jurisdiction over this case pursuant to 26 U.S.C. § 7422(a) because the Estate failed to file a "claim for refund" prior to filing this lawsuit. Second, and alternatively, the government argues that the doctrine of res judicata precludes the present lawsuit. The Court agrees with both arguments and addresses each, in turn.

## A. The Court Lacks Jurisdiction

The Court's jurisdiction over this matter is premised on 28 U.S.C. § 1346(a)(1), which confers concurrent jurisdiction upon federal district courts and the Court of Federal Claims over "[a]ny civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected." However, under the Internal Revenue Code,

> [n]o suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected . . . until a claim for refund has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

26 U.S.C. § 7422(a). Via § 1346(a)(1), then, "Congress has expressly waived sovereign immunity for suits against the United States by taxpayers seeking to recover tax refunds." *Kaffenberger v. United States*, 314 F.3d 944, 950 (8th Cir. 2003). But via § 7422(a), "Congress limited that waiver by requiring a taxpayer to file an administrative claim [for refund] with the Secretary of Treasury before bringing a [refund] lawsuit." *Id.* at 950-951. Summarizing,

> [a] taxpayer seeking a refund of taxes erroneously or unlawfully assessed or collected may bring an action against the Government either in United States district court or in the United States Court of Federal Claims. The Internal Revenue Code specifies that before doing so, the taxpayer must comply with

4

> the tax refund scheme established in the Code. That scheme provides that a claim for a refund must be filed with the Internal Revenue Service (IRS) before suit can be brought, and establishes strict timeframes for filing such a claim.

*United States v. Clintwood Elkhorn Min. Co.*, 553 U.S. 1, 4 (2008) (citations omitted).

The sole question for determination is whether the Estate properly filed a claim for refund prior to the commencement of this refund suit. The Court finds that it did not and, accordingly, will dismiss this case for lack of jurisdiction pursuant to § 7422(a).

As stated in a treatise,

> [t]o maintain a suit for refund, several conditions must be met:
>
> (1) Full Payment—The deficiency amount, generally interpreted as including penalties and interest, must be paid in full;
>
> (2) Credit Claim—The taxpayer must have filed an administrative claim for . . . refund with the Service within the appropriate period of limitations;
>
> (3) Action Upon Claim—The claim for refund must have either been acted upon by the Service or six months must have passed since it was filed;
>
> (4) Notice of Disallowance—The suit for refund must have been brought within two years from the date of the mailing of the notice disallowing the refund claim (if one is sent) or within the period of an agreed extension; and
>
> (5) Original Claim—If the suit is based on the rejection of a refund claim, or failure of the Service to act on it, the suit must state the same grounds as the claim that was filed with the Service.

Mertens, Law of Federal Income Taxation § 58A:1 (2006).

Critically, "[n]o overpayment will exist prior to the date of payment, and any refund claim filed prior to the existence of an overpayment will not be effective for subsequently paid amounts." Kafka & Cavanagh, Litigation of Federal Civil Tax Controversies § 13.06 (2d ed. 1995). *See also Ackerman v. United States*, 643 F. Supp.2d 140, 146 (D.D.C. 2009) ("the term 'claim for refund'

5

requires that payment be made before a claim is filed"); *Canterna v. United States, Dep't of Treasury, I.R.S.*, 2003 WL 22753566, at * 4 (W.D. Pa. Oct. 1, 2003) (unpublished) ("[i]t is axiomatic that a claim for refund presupposes that the tax and interest have been paid"); *Brielman v. United States*, 1974 WL 643, at *1 (D. Mass. Aug. 27, 1974) (unpublished) ("[t]he language of [§ 7422(a)] clearly contemplates a claim after payment and requires the filing of such a claim before suit can be instituted"); *Gilmore v. United States*, 1977 WL 1139, at *1 (W.D. Tex. Jan. 26, 1977) (unpublished) ("[s]ince there can be no valid claim for refund until after the payment of the tax in question, any claim for refund made prior to payment of the tax is not 'duly filed'"). These cases all stand for the proposition that, in order to satisfy the jurisdictional requirements of § 7422(a), the taxpayer must first pay the deficiency, then file a claim for refund, and then file a refund lawsuit, in that precise order.[2] The *Ackerman* court has explained the rationale for this "pay-first" requirement:

> First, common sense dictates that a person cannot request a "refund" when the entity to which she makes her request does not have her money. Second, IRS regulations, which section 7422 requires a taxpayer to follow to "duly file[]" a "claim for refund," 26 U.S.C. § 7422(a), state that "*[a]fter* payment of the tax, a taxpayer may, within the applicable period of limitations, contest the assessment by filing with the district director a claim for refund of all or any part of the amount paid. . . ." *See* 26 C.F.R. § 601.103 (emphasis added).

*Ackerman*, 643 F. Supp.2d at 146.

---

[2] Although not cited by the parties, the Court is aware of a few old cases, both decided by the Fourth Circuit, in which the "pay-first" requirement was not followed. *See Crenshaw v. Hrcka*, 237 F.2d 372, 373 (4th Cir. 1956) (per curiam); *United States v. Fidelity & Deposit of Md.*, 178 F.2d 753 (4th Cir. 1949) (per curiam). However, as one court has aptly noted, "these cases have not been followed by other courts and they appear to be inconsistent with the principle that waivers of sovereign immunity, such as consent to be sued for tax refunds, are to be narrowly construed and each condition for such waiver must be met." *Nelson v. United States*, 727 F. Supp. 1357, 1359 (D. Nev. 1989).

In the present case, the Estate seeks a refund of the $262,932 deficiency that it paid on May 1, 2009. As noted above, under § 7422(a), a taxpayer must file a claim for refund *after* payment of the deficiency. The Estate has simply not done so here. For this reason, the Court lacks jurisdiction over this matter pursuant to § 7422(a). *See Ackerman*, 643 F. Supp.2d at 146; *Canterna*, 2003 WL 22753566, at *4; *Brielman*, 1974 WL 643, at *1; *Gilmore*, 1977 WL 1139, at *1.

The Estate argues that the amended estate tax return that it filed on January 18, 2008—before it paid the $262,932 deficiency on May 1, 2009—constitutes the necessary claim for refund. The Estate points out that (1) the IRS explicitly treated the amended return as a claim for refund, *see* Pl. Ex. 2 (letter from the IRS to counsel for the Estate referencing the "Claim for Refund filed on behalf of the Estate"), and (2) the amended return satisfies the requirements of 26 C.F.R. § 301.6402-2, which states that "[a] claim [for refund] must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof."

The government, in response, does not dispute that the amended return may satisfy the requirements of § 301.6402-2, but states that "[§ 301.6402-2] is only one of several requirements that must be met in order to have a duly filed claim for refund." Reply at 2. With regard to the fact that the IRS construed the amended return as a claim for refund, the government contends that "it is irrelevant how the IRS, or for that matter any party to the litigation, characterizes the amended estate tax return" because "[i]t has long been held that parties may not, by agreement, confer jurisdiction on the court; the court must conduct its own analysis of whether it has jurisdiction over the case."

The government's arguments are persuasive. The bottom line here is that no claim for refund was filed after the deficiency was paid, as required by § 7422(a). As stated by the government,

> [s]ince [the Estate] does not deny our factual assertion that on the date of filing the amended estate tax return, January 18, 2008, the plaintiff had paid no more in estate taxes that it admits was rightfully due, one jurisdictional prerequisite to this court obtaining jurisdiction is missing: on January 18, 2008, there was no overpayment of estate taxes.

Reply at 2. Because (1) no claim for refund was filed after the Estate paid the deficiency and (2) "the term 'claim for refund' requires that payment [of the deficiency] be made before a claim [for refund] is filed," *Ackerman*, 643 F. Supp.2d at 146, this case must be dismissed. *See* § 7422(a).

### B. This Action is Barred by the Doctrine of Res Judicata

#### 1. Law

Generally,

> when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.

*Comm'r of Internal Revenue. v. Sunnen*, 333 U.S. 591, 597 (1948) (quotation marks and citation omitted). The Fifth Circuit has succinctly explained how res judicata principles operate in federal tax cases:

> In federal tax litigation one's total income tax liability for each taxable year constitutes a single, unified cause of action, regardless of the variety of contested issues and points that may bear on the final computation. As in any other area, res judicata bars subsequent litigation of a previously adjudicated cause of action, including those claims and defenses that could have been, but were not, raised in the earlier proceeding. All such issues are considered to have merged into the prior judgment. Accordingly, when during the course of a refund suit a taxpayer petitions the Tax Court in response to an additional disputed deficiency for the same tax year, the Tax Court acquires jurisdiction over the entire cause of action, necessarily including all possible issues controlling the determination of the amount of tax liability for the year in question whether or not raised by the deficiency notice. The district court is then divested of jurisdiction over all such issues under section 7422(e).

8

*Finley v. United States*, 612 F.2d 166, 170 (5th Cir. 1980). *See also Sunnen*, 333 U.S. 598 ("if a claim of liability or non-liability relating to a particular tax year is litigated, a judgment on the merits is res judicata as to any subsequent proceeding involving the same claim and the same tax year"). Although *Sunnen* involved income taxes, its holding has subsequently been applied in the context of estate taxes:

> when . . . an estate taxpayer files a petition in the Tax Court, that court acquires jurisdiction over the entire cause of action regarding the estate's tax liability, and the district court is divested of jurisdiction over the estate's refund suit, regardless of the lack of common identity between the issues raised by the two claims.

*Finley*, 612 F.2d at 170.

Notably, however, preclusion "cannot apply when the party against whom the earlier decision is asserted did not have a 'full and fair opportunity' to litigate [an] issue in the earlier case." *Allen v. McCurry*, 449 U.S. 90, 95 (1980).

## 2. Discussion

Applying the law discussed above to the facts of the present case, the Court finds that the present action is barred by the doctrine of res judicata. As discussed, the Estate filed its original estate tax return on July 31, 2001. The return was audited by the IRS, who assessed an estate tax deficiency in the amount of $507,103. The Estate then petitioned the Tax Court for a redetermination of the claimed deficiency, arguing that the amount was incorrect. The Tax Court disagreed and, on October 5, 2006, issued a 39-page opinion addressing and rejecting the Estate's arguments on the merits. The Tax Court's opinion is attached as Exhibit 1 to the government's motion.

The law is clear that

9

> when . . . an estate taxpayer files a petition in the Tax Court, that court acquires jurisdiction over the entire cause of action regarding the estate's tax liability, and the district court is divested of jurisdiction over the estate's refund suit, regardless of the lack of common identity between the issues raised by the two claims.

*Finley*, 612 F.2d at 170. The Estate has filed the present refund suit under 26 U.S.C. § 7422 to recover estate taxes that are alleged to have been erroneously assessed and collected by the IRS. Specifically, the Estate argues that, in light of the Tax Court's holding that the two annuities resulting from the negligence lawsuit are includable in the gross estate, the attorney fees incurred in the negligence lawsuit are deductible, thereby reducing the Estate's tax liability. However, this Court is divested of jurisdiction, in accordance with *Finley*, because the Tax Court previously "acquire[d] jurisdiction over the *entire* cause of action regarding the [E]state's tax liability." *See id.* (emphasis added). That the Tax Court did not actually rule on the claim now before this Court is immaterial, as this Court is divested of jurisdiction "regardless of the lack of common identity between the issues raised by the two claims." *See Finley*, 612 F.2d at 170.

The Estate attempts to avoid this result by arguing that it could not have challenged the deductibility of the attorney fees during the proceedings before the Tax Court, and therefore should not be precluded from challenging it here, because the claim did not arise until after the Tax Court ruled that the annuities were includable in the Estate's gross estate:

> The Tax Court determined that the annuities in question related to the claims of Sarah Davenport and were not to be considered part of a single joint settlement of combined claims under the lawsuit. On this basis, the Tax Court found the annuities were taxable in Sarah Davenport's Estate. This determination created a claim on the part of [Decedent's parents] to recover attorney fees which were attributable to the separate share of Sarah Davenport as determined by the Tax Court and which were paid out of the settlement to [Decedent's parents] without any contribution by Sarah Davenport.

10

Resp. at 8. Thus, the Estate argues that it did not have a "full and fair opportunity" to litigate this claim before the Tax Court because the claim arose a result of the Tax Court's ruling. The Court is unpersuaded.

As noted by the government in its reply brief, the Estate's argument that it could not have raised the present claim in the earlier action before the Tax Court is without merit. This is because the Estate could have, and should have, asserted its present argument regarding the deductibility of the attorney fees as an alternative argument before the Tax Court. As correctly stated by the government:

> Since the Tax Court adopted the position of the IRS that was set forth in the notice of deficiency, the plaintiff knew, or should have known, that if the IRS's position was upheld, the attorneys fee expense issue would arise. With this knowledge prior to the filing of its Tax Court petition, the plaintiff could have pled in that petition, in the alternative, that if its primary position were not sustained, then it would be entitled to claim a deduction for the attorneys fees expenses. If the plaintiff believed that it needed a probate court order to validate the expense, it could have obtained an extension of time from the Tax Court to get such an order prior to the court ruling on its alternative position.

Reply at 4. *See Aunyx Corp. v. Canon U.S.A., Inc.*, 978 F.2d 3, 8 (1st Cir. 1992) ("[a] second action may be barred under the doctrine of *res judicata* even though a different legal theory . . . is involved"); *In re Teltronics Servs., Inc.*, 762 F.2d 185, 193 (2nd Cir. 1985) ("[n]ew legal theories do not amount to a new cause of action so as to defeat the application of the principle of res judicata"); *Roach v. Teamsters Local Union No. 688*, 595 F.2d 446, 448 (8th Cir. 1979) ("[i]t is well established that res judicata prevents a litigant from getting yet 'another day (in court) after the first lawsuit is concluded by giving a different reason than he gave in the first for recovery of damages for the same invasion of his rights'" (citations omitted)). Because the Estate could have raised the present claim as an alternative argument in the prior proceeding before the Tax Court, it is precluded

from raising it in this subsequent action.[3]

## IV. CONCLUSION AND ORDER

The Court lacks jurisdiction over this matter and the case must be dismissed. *See* 26 U.S.C. § 7422(a). Moreover, the Estate is precluded, under res judicata principles, from re-litigating issues related to its tax liability in light of the final judgment entered by the Tax Court on October 5, 2006.

---

[3] Alternatively, the government argues that the Estate could have raised the present issue involving the deductibility of attorney fees, after the Tax Court issued its decision, via Tax Court Rules 156, 161, and 162. The Court disagrees. Rule 156 authorizes the reopening of a case for further trial in order to address the viability of "a deduction involving expenses incurred *at or after* the trial" (emphasis added). The attorney fees at issue in the present case were incurred long before the proceedings in the Tax Court and are unrelated to the closing of the Estate. Thus, Rule 156 would not have been an appropriate vehicle by which to address the present claim following trial in the Tax Court.

Neither would Rules 161 and 162. Rule 161 authorizes motions for reconsideration in Tax Court. However,

> [r]econsideration under Rule 161 serves the limited purpose of correcting substantial errors of fact or law and allows the introduction of newly discovered evidence that the moving party could not have introduced, by the exercise of due diligence, in the prior proceeding.

*Estate of Quick v. Comm'r of Internal Revenue*, 110 T.C. 440 (1998). As explained above, the present claim could have been raised as an alternative argument in the Tax Court prior to the issuance of its October 5, 2006, opinion. Thus, the Estate could not have utilized Rule 161 as a means by which to raise the present claim in the Tax Court after it rendered its decision.

Finally, Rule 162, which governs motions to vacate or revise the decision of a tax court, is analogous to Fed. R. Civ. P. 60(b). *See Thurner v. Comm'r of Internal Revenue*, 255 Fed. Appx. 90, 92 (7th. Cir. 2007) ("[w]e previously have analogized a tax court's denial of a motion to vacate to a district court's denial of relief from judgment under Federal Rule of Civil Procedure 60(b)"). Rule 60(b) authorizes relief from judgment in the case of a mistake, inadvertence, surprise, excusable neglect, newly discovered evidence, fraud, a void, satisfied, released, or discharged judgment, and "any other reason that justifies relief." It is unlikely that any of these rationales would have provided the Tax Court with a basis to evaluate the present claim involving the deductibility of attorney fees in light of the fact that the issue could have been argued prior to the entry of judgment.

*See Finley*, 612 F.2d at 170.  For these reasons, this case is dismissed.

       SO ORDERED.


                                    S/Paul D. Borman
                                    PAUL D. BORMAN
                                    UNITED STATES DISTRICT JUDGE

Dated:  August 16, 2010

                                CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on August 16, 2010.


                                    S/Denise Goodine
                                    Case Manager